UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LUIS A. RODRIGUEZ,

                Plaintiff,                **DECISION AND ORDER**

                   v.                               1:19-CV-00179 EAW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

## INTRODUCTION

Represented by counsel, plaintiff Luis A. Rodriguez ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 8), and Plaintiff's reply (Dkt. 9). For the reasons discussed below, the Commissioner's motion (Dkt. 8) is granted and Plaintiff's motion (Dkt. 6) is denied.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on March 30, 2015. (Dkt. 4 at 82).[1] In his applications, Plaintiff alleged disability beginning December 31, 2010, due to arthritis in the spine, high blood pressure, chronic hepatitis C, depression, and lumbar spine problems. (*Id.* at 83). Plaintiff's applications were initially denied on September 28, 2015. (*Id.* at 108-15). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Paul Georger on December 5, 2017. (*Id.* at 40-72). On February 27, 2018, the ALJ issued an unfavorable decision. (*Id.* at 14-39). Plaintiff requested Appeals Council review; his request was denied on December 11, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-13). This action followed.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1]  When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ

determined that Plaintiff last met the insured status requirements of the Act on December 31, 2010. (Dkt. 4 at 23). At step one, the ALJ determined that Plaintiff had engaged in substantial gainful work activity during the second quarter of 2016 through the second quarter of 2017, but that there was "a continuous 12-month period[] during which [Plaintiff] did not engage in substantial gainful activity." (*Id.*). The ALJ addressed the remainder of his findings to the period during which Plaintiff did not engage in substantial gainful activity. (*Id.*).

At step two, the ALJ found that, through the date last insured, Plaintiff had no severe impairments and thus was not disabled as defined in the Act at any time from the alleged onset date through December 31, 2010, the date last insured. (*Id.* at 23-25). Accordingly, the ALJ found that Plaintiff was not eligible for DIB. (*Id.* at 25). The ALJ then continued the sequential evaluation as to Plaintiff's eligibility for SSI. (*Id.*). At step two, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar and thoracic spine, scoliosis of the thoracic spine, obesity, depression, and generalized anxiety disorder. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 26). The ALJ particularly considered the requirements of Listings 1.04, 12.04, and 12.06 in reaching this conclusion. (*Id.* at 26-27).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the additional limitations that:

> [Plaintiff] can occasionally stoop. He is limited to simple, routine, and repetitive tasks, to simple work-related decisions, and to occasional[] interaction with supervisors, coworkers, and the general public.

(*Id.* at 27).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 32).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of housekeeper, merchandise marker, and router. (*Id.* at 32-33). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from the alleged onset date through the date of the ALJ's decision. (*Id.* at 33).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse or, in the alternative, to remand this matter to the Commissioner, arguing that the ALJ's RFC finding was unsupported by substantial evidence because the ALJ relied on his own lay opinion. (Dkt. 6-1 at 11-17). Plaintiff also argues that the ALJ erred in failing to perform a function-by-function assessment of his RFC. The Court has considered these arguments and, for the reasons discussed below, finds them to be without merit.

### A. Substantial Evidence Supports the RFC Finding

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly

correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation omitted).

In this case, the ALJ relied on consultative examiner Dr. Michael Rosenberg's opinion in assessing Plaintiff's physical RFC. (Dkt. 4 at 31). Dr. Rosenberg conducted a physical examination of Plaintiff and observed:

> Cervical spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. No scoliosis, kyphosis, or abnormality in thoracic spine. Lumbar spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. SLR negative bilaterally. Full ROM of shoulders, elbows, forearms, and wrists bilaterally. Bilateral knee flexion 120 degrees. No evident subluxations, contractures, ankylosis, or thickening. Joints stable. Pain with ROM of lumbosacral spine. No redness, heat, swelling, or effusion.

(Dkt. 4 at 446). Based on the examination, Dr. Rosenberg opined that Plaintiff had "[n]o physical limitations." (*Id.*). The ALJ gave this opinion "partial weight" because it was "inconsistent with [Plaintiff's] longitudinal treatment history, which document[ed] [Plaintiff's] back pain, tenderness, and other sporadic deficits, suggesting that [Plaintiff] should be limited to [a] range of light work. . . ." (*Id.* at 31).

Plaintiff argues that because the ALJ afforded only partial weight to Dr. Rosenberg's opinion, the ALJ necessarily and impermissibly relied on his own lay opinion. (Dkt. 6-1 at 12-17). The Court disagrees. *See Beckles v. Comm'r of Soc. Sec.*, No. 18-CV-321P, 2019 WL 4140936, at *4 (W.D.N.Y. Aug. 30, 2019) (rejecting the argument that an

ALJ "rejected" a medical opinion where she afforded it partial weight).

As noted above, Dr. Rosenberg opined that Plaintiff had no physical limitations. (Dkt. 4 at 446). This opinion was supported by Dr. Rosenberg's thorough physical examination of Plaintiff and consistent with the medical evidence in the record which documented back pain, but generally contained unremarkable objective findings. (*See* Dkt. 4 at 346 (despite Plaintiff's history of chronic back pain, Dr. Steve H. Millmond noted that Plaintiff's lumbosacral spine x-ray indicated a skeletally intact lumbosacral spine, "normal alignment of . . . lumbar vertebral bodies," and no apparent scoliosis, and that Plaintiff's thoracic spine x-ray indicated skeletally intact thoracic spine and minor spondylosis), 355 (Plaintiff's physical examination of back indicated "no tenderness to palpation" and "normal inspection"), 357-58 (Dr. Thomas Burns noted that Plaintiff's cervical spine CT scan indicated mild mid cervical spondylosis and no cervical fracture or subluxation), 375 (upon physical examination of Plaintiff, Sarah Johnson, RN observed that Plaintiff had normal gait and that his spine had intact motor strength and no tenderness), 571 (upon physical examination of Plaintiff, Dr. Quratul Raja observed "normal gait for age"), 575-76 (upon physical examination of Plaintiff, Dr. John Pollina, Jr. noted normal gait and station, intact lower extremity reflexes, "5/5 strength in all muscle groups in lower extremities bilaterally," and concluded lumbar spine MRI "displayed a normal lumbar MRI")).[2] The

---

[2] The Court is also not persuaded by Plaintiff's argument that the ALJ's decision was unsupported by substantial evidence because the ALJ did not "address[] Plaintiff's abnormal examinations." (Dkt. 9 at 3). "[A]n ALJ is not required to discuss every piece of evidence submitted" and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quotation omitted). Here, the ALJ thoroughly reviewed the

ALJ did not err in relying on Dr. Rosenberg's opinion to ascertain Plaintiff's physical RFC. *See Bona v. Comm'r of Soc. Sec.*, No. 1:15-CV-00658 EAW, 2016 WL 4017336, at *11 (W.D.N.Y. July 22, 2016) ("It is well settled that an ALJ is entitled to rely upon the opinions of consultative examiners, and such written reports can constitute substantial evidence." (quotation omitted)).

The ALJ also did not err in including in his RFC finding limitations beyond those identified by Dr. Rosenberg. *See Beckles*, 2019 WL 414093, at *5 ("Here, the ALJ did not completely reject [the consultative examiner's] medical opinion; rather, she incorporated [the consultative examiner's] assessed limitations and also included greater limitations than opined by [the consultative examiner]. I find that the ALJ's RFC determination is supported by medical opinion evidence and is not the product of the ALJ's own lay interpretation of the medical evidence."); *Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) ("Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." (internal quotation marks and citations omitted)); *Castle v. Colvin*, No. 1:15-CV-00113(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) ("[T]he fact that the ALJ's RFC assessment did not perfectly match Dr. Balderman's opinion, and was in fact more restrictive than that opinion, is not grounds for remand.").

In this case, the ALJ partially credited Plaintiff's own statements regarding his functional capabilities. Plaintiff testified at the hearing that he was unable to stand or sit

---

evidence in the record, which necessarily included Plaintiff's "abnormal examinations." As such, Plaintiff's argument is without merit.

for a long time because of his back pain. (*See* Dkt. 4 at 56). The ALJ did not fully credit these statements, noting that Plaintiff's treatment was inconsistent with his allegations of disability. (Dkt. 4 at 25). For example, on May 13, 2015, Plaintiff received a neurosurgical consultation at the University of Buffalo's Neurosurgery Center. (*Id.* at 581). Plaintiff complained of "axial pain that . . . radiate[s] into his midthoracic region," but also confirmed that he "ha[d] [not received] any conservative treatment in the form of physical therapy, chiropractic therapy or injections." (*Id.*). Further, Plaintiff stated that he was simply taking "aspirin as needed for his pain." (*Id.*). Dr. Pollina concluded that the MRI "display[ed] a normal lumbar," and that there was "no need for neurosurgical intervention." (*Id.*). Dr. Pollina ultimately recommended "a trial of physical therapy." (*Id.*). In light of the above, there was substantial evidence for the ALJ to conclude that Plaintiff's allegations of disability were inconsistent with the medical evidence in the record. *See Monroe v. Berryhill*, No. 17 Civ. 3373 (ER) (HBP), 2018 WL 3912255, at *17 (S.D.N.Y. July 24, 2018) ("None of plaintiff's consulting or treating physicians ever recommended treatment other than medication, night splinting or physical therapy for plaintiff's impairments. These 'conservative treatments' . . . support a[n] RFC finding of light work.").[3]

---

[3]   Contrary to Plaintiff's assertion, the ALJ did not conclude that Plaintiff's conservative treatment plan "automatically equate[d] to a finding of no disability." (Dkt. 9 at 3). Instead, the ALJ properly considered Plaintiff's conservative treatment in assessing the credibility of Plaintiff's allegations concerning the severity of his impairments. *See Mollicone-Amedeo v. Colvin*, No. 1:14-CV-1541 (GTS), 2016 WL 2354260, at *5 (N.D.N.Y. May 4, 2016) (finding ALJ properly considered the plaintiff's conservative treatment in assessing credibility).

In addition to relying on the medical evidence, the ALJ also properly relied on Plaintiff's activities of daily living to conclude that Plaintiff was capable of light work. The ALJ found that Plaintiff cooked, cleaned, laundered, showered, dressed himself, performed childcare, shopped in stores twice a month, and spent time with others once a week. (Dkt. 4 at 30). Such evidence supports the ALJ's conclusion that Plaintiff was capable of light work. *See Ortiz v. Saul*, No. 1:19-cv-00942 (ALC), 2020 WL 1150213, at *1 (S.D.N.Y. Mar. 10, 2020) ("Plaintiff's ability to perform a range of light household chores, including cooking, shopping, cleaning, and laundry . . . support[s] a light work RFC finding."); *Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (finding that the plaintiff's reported daily activities, which included walking her dogs and cleaning, were consistent with the ability to perform light work).

Further, evidence that Plaintiff worked after his onset date also supports the ALJ's RFC finding. Plaintiff worked at substantial gainful activity levels for a portion of the relevant period. (*See* Dkt. 4 at 23 ("These earnings are above the threshold level necessary to constitute substantial gainful activity, which were $3,390 [for two quarters] in 2016 and $3,510 [for two quarters] in 2017.")). This evidence supports the ALJ's conclusion that Plaintiff was able to work. *See* 20 C.F.R. §§ 404.1571, 416.971 ("The work . . . that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level."); *Rivers v. Astrue*, 280 F. App'x 20,

---

Further, the Court notes that Plaintiff's reliance on *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) is misplaced. In *Shaw*, the Second Circuit determined that conservative treatment, alone, was insufficient to disregard the treating physician's opinion. *Shaw*, 221 F.3d at 134. Here, there is no opinion by a treating physician. Accordingly, *Shaw* is inapposite.

23 (2d Cir. 2008) (evidence that the plaintiff worked during the relevant period "support[ed] the ALJ's conclusion that [the plaintiff] had the [RFC] . . . to perform a full range of light work during the relevant periods").

The ALJ also properly concluded that Plaintiff's receipt of unemployment insurance benefits in the third quarter of 2017, during a portion of the relevant period, was also evidence that Plaintiff's pain and symptoms were not as severe as he alleged. (Dkt. 4 at 30). *See Rosenthal v. Colvin*, No. 12-CV-892S, 2014 WL 1219072, at *3 (W.D.N.Y. Mar. 24, 2014) ("Once [the plaintiff] claimed unemployment benefits, thereby certifying he was ready, willing, and able to work, the ALJ could factor that into his credibility determinations. Indeed, [the plaintiff's] request and acceptance of unemployment benefits fundamentally conflicts with his contention that he suffers from a disability and an inability to work.").

In assessing Plaintiff's RFC, the ALJ was free "to credit some of [P]laintiff's statements while discrediting others," especially in light of Plaintiff's activities of daily living, as well as Plaintiff having worked at substantial gainful activity levels and having received unemployment insurance for a portion of the relevant period. *Dougherty-Noteboom v. Berryhill*, No. 17-CV-00243-HBS, 2018 WL 3866671, at *10 (W.D.N.Y. Aug. 15, 2018); *see also Barbato v. Astrue*, No. 09-CV-6530T, 2019 WL 2710521, at *5 (W.D.N.Y. July 7, 2010) (not error for the ALJ to discount some of the plaintiff's subjective complaints where he found that the plaintiff was not entirely credible). Here, the ALJ partially credited Plaintiff's complaints regarding his back pain and the associated limitations, which was within his discretion.

For all of these reasons, the Court finds that the ALJ's RFC assessment was supported by substantial evidence and not based on his own lay opinion. Accordingly, remand is not warranted.

### B. Function-by-Function Analysis

Plaintiff argues that the ALJ erred in failing to perform a function-by-function analysis. (Dkt. 6-1 at 16-17). The Commissioner's regulations "require that the ALJ include in his RFC assessment a function-by-function analysis of the claimant's functional limitations or restrictions and an assessment of the claimant's work-related abilities on a function-by-function basis." *Karabinas v. Colvin*, 16 F. Supp. 3d 206, 216 (W.D.N.Y. 2014) (quotation omitted). However, the Second Circuit has held that "an ALJ need not expressly discuss a claimant's capacity to perform each work-related function before classifying the claimant's RFC in exertional terms," that "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence," and that "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence . . . remand is not necessary merely because an explicit function-by-function analysis was not performed." *Cichocki*, 729 F.3d at 177.

Here, as discussed above, substantial evidence, which includes Plaintiff's medical evidence of record, activities of daily living, and Dr. Rosenberg's opinion, supports the ALJ's RFC finding. As such, the ALJ's failure to perform an explicit function-by-function analysis does not warrant remand. *See Trimm v. Colvin*, No. 7:13-CV-00961 MAD, 2015

WL 1400516, at *12 (N.D.N.Y. Mar. 26, 2015) (although ALJ did not perform a function-by-function analysis, no remand required where the ALJ "conducted a thorough examination of Plaintiff's limitations and capabilities set forth in the record before determining that Plaintiff ha[d] the RFC to perform a full range of light work").

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 8) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: March 20, 2020
Rochester, New York